**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

ARTEMAS TYRELL ROBERTS,        )
                               )
        Petitioner,         )
                               )
        v.                  )        1:10CR173-1
                               )        1:13CV128
UNITED STATES OF AMERICA,       )
                               )
        Respondent.         )

## MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This case comes before the undersigned United States Magistrate Judge for a recommended ruling on Petitioner's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Docket Entry 61) ("Section 2255 Motion").[1]  For the reasons that follow, the Court should deny the instant Section 2255 Motion.

## INTRODUCTION

The Court (per Senior United States District Judge N. Carlton Tilley, Jr.) previously entered a Judgment against Petitioner imposing, inter alia, a total prison term of 294 months, upon his guilty plea to possessing with intent to distribute 12.8 grams of cocaine base in violation of 21 U.S.C. § 841(a)(1) (with an offense date of September 3, 2009), as well as for possessing firearms in furtherance of that drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i).  (Docket Entry 42; see also Docket Entry

---

[1] Parenthetical citations refer to Petitioner's criminal case.

1 (Indictment); Docket Entry 35 (Plea Agt.); Docket Entry 39 (Plea Hrg. Tr.); Docket Entry 49 (Sent'g Hrg. Tr.).)[2] The United States Court of Appeals for the Fourth Circuit affirmed and the United States Supreme Court refused review. United States v. Roberts, 467 F. App'x 187 (4th Cir.), cert. denied, ___ U.S. ___, 133 S. Ct. 47 (2012). Petitioner then timely filed the instant Section 2255 Motion (Docket Entry 61), followed by a Supplemental Memorandum of Law in Support (Docket Entry 69). The United States responded (Docket Entry 71) and Petitioner replied (Docket Entry 73).[3]

## DISCUSSION

Petitioner's Section 2255 Motion asserts these four claims:

1) "Officers created [the] exigency [that they relied upon to justify a search] by purposely allowing [a fugitive] to enter Petitioners [sic] residence by using unreasonable and poor investigative tactics" (Docket Entry 61 at 2 ("Ground One"));

2) "Officers had sufficient probable cause to obtain a search warrant prior to approaching Petitioners [sic] residence [and creating exigent circumstances]" (id. at 4 ("Ground Two"));

---

[2] Petitioner reserved his right to appeal the denial of his pre-plea Motion to Suppress. (Docket Entry 35, ¶ 5.b.; see also Docket Entry 10 (Mot. to Suppress); Docket Entry 22 (Order denying Mot. to Suppress); Docket Entry 50 (Mot. to Suppress Hrg. Tr.).)

[3] The United States attached to its Response an affidavit from Petitioner's appellate counsel. (Docket Entry 71-2.) Petitioner submitted photographs with his reply (Docket Entry 73 at 5) and via a separate filing (Docket Entry 75 at 2-3).

2

3) "Petitioner should have been sentenced under [the Fair Sentencing Act's] more lenient penalty provision" (id. at 5 ("Ground Three")); and

4) "Petitioners [sic] counsel was ineffective by not investigating and preparing for Petitioners [sic] [d]irect appeal" (id. at 6 ("Ground Four")).

### Grounds One and Two:  Unlawful Search Claims

Prior to pleading guilty, Petitioner moved to suppress all evidence "obtained as a result of the unlawful search and seizure conducted . . . at [his residence (a townhouse-style condo)] . . . in violation of the Fourth Amendment."  (Docket Entry 10 at 1.) Specifically, Petitioner contended (in his Memorandum in Support of his Motion to Suppress) that, after "conduct[ing] surveillance at [his condo], for the purpose of serving a Federal arrest warrant on Mr. Jevon Nicholson . . ., [law enforcement officers] decided to approach the condo and make contact with the occupants and attempt to consensually search the condo."  (Docket Entry 11 at 1.)[4] According to that Memorandum (which principally relied for legal support on United States v. Mowatt, 513 F.3d 395 (4th Cir. 2008) (see Docket Entry 11 at 3-4)), the officers did not properly

---

[4] The above-quoted Memorandum further stated: "Information had been received that [Mr.] Nicholson was at the [condo,] . . . a red Dodge Challenger was observed arriving at the condo[] . . . [and officers saw someone matching his description] exit the Challenger and enter the back door of the condo."  (Docket Entry 11 at 1.)

attempt to obtain consent, but rather "impermissibly created or manufactured [an] 'exigency' in order to justify [a] warrantless entry [of the condo by] . . . approaching the back door of the condo (instead of the front door) at approximately 10:30 p.m. while a pitbull was chained close to the back door, . . . causing it to bark incessantly." (Id. at 4.)[5] That Memorandum continued: "The barking in turn caused [Petitioner's brother] to exit the back door and encounter [officers] who stated 'POLICE, let us see your hands.' [Petitioner's brother] then retreated into the condo . . . [while] reach[ing] for his waist band with his right hand and remov[ing] an object . . . [which an officer said] was a hand gun." (Id. at 5 (some internal quotation marks omitted).)

As described in that Memorandum, this allegedly unconstitutional sequence of events thereafter occurred:

1) officers ordered Petitioner's brother to exit the condo, handcuffed him as he did, and "removed [a] sheet [hanging in the rear door] to allow officers to see inside the [condo]" (id. at 2);

2) "[a]round the time [Petitioner's brother] exited the back door, [Mr.] Nicholson exited the front door and retreated back inside . . . [but ultimately] came back out the front door and surrendered" (id.); and

_____

[5] The above-quoted Memorandum also asserted that officers created the exigency because they "could have simply encountered [Mr. Nicholson] when he exited the Dodge Challenger, rather than waiting until he entered the [condo]." (Docket Entry 11 at 5.)

3) after learning from "officers at the front door that [Mr.] Nicholson was in custody[,] . . . [o]fficers then entered the back door to conduct a sweep . . . [during which] contraband was observed in plain view [whereupon] a search warrant was obtained and executed yielding additional contraband" (id. at 2-3).

The Court (per now-Chief United States District Judge William L. Osteen, Jr.) held a hearing, at which three officers testified and the United States introduced six photographs. (See Docket Entry 50 at 2 (providing index of hearing evidence); see also id. at 4-105 (documenting evidentiary portion of hearing).) Upon the completion of the hearing evidence, Petitioner's counsel argued that the Court should grant the Motion to Suppress because:

1) the officers "ha[d] probable cause to get a search warrant [for the condo] to serve the arrest warrant [for Mr. Nicholson]" (id. at 129; see also id. at 129-30 ("[The man officers saw enter the condo] fit the description [of Mr. Nicholson]. He was driving the car [Mr. Nicholson] was supposed to be in. They had information [Mr. Nicholson] would be there."));

2) the officers created exigent circumstances by approaching the condo's back door, particularly given the hour and the pit bull's presence (see id. at 130-31; see also id. at 132 ("[T]he Court can take judicial notice that strangers use the front door . . . . That's what is expected of people. . . . [I]t's 10:30 at night [and] there's a pit bull chained back there . . . . [The

5

officers] claim they didn't know that pit bull was there. . . .
[E]ven if they didn't, they should have . . . . Their surveillance
should have revealed [its] presence . . . ."); and

3) "when [Petitioner's brother] came out the back door [the
first time], [officers] violated the law . . . by ordering him to
show his hands . . . [when he had done] nothing wrong . . . [and]
[t]hey had no idea he had a gun at that point . . . [and officers
thus were] breaking the law in causing an exigency" (id. at 145).

The Court (per now-Chief Judge Osteen) then held in pertinent
part as follows:

> I find, based on the evidence presented, that the
> officers' testimony in this case is credible, and I adopt
> the facts as testified to by the officers in this matter.

> In adopting the facts as testified to by the
> officers in this matter, I decline to find that . . .
> officers used a knock and [talk] as a subterfuge to
> create exigent circumstances. I find [the officers']
> testimony credible on those points.

> Second, recognizing that some deference has to be
> given to law enforcement to make certain tactical
> decisions during the process of matters unfolding on or
> during the course of surveillance or during the course of
> a knock and [talk] or any other investigative activity by
> law enforcement, it seems to me in this case that the
> officers' decision . . . to approach the residence to
> conduct a knock and [talk] under all the facts of this
> case and after hearing the testimony of the officers was
> a reasonable decision and not one undertaken to avoid or
> undermine the warrant requirement.

> . . . .

> I further find that the officers, as they testified,
> were not aware that the pit bull was at the back and were
> caught by surprise when the pit bull started barking, and

6

then [Petitioner's] brother came out of the back of the [condo]. . . .

While there may be some question as to the appropriateness of the officers' conduct as it relates to [Petitioner's] brother, [Petitioner] himself does not have standing to challenge that conduct. And in any event, as I mentioned earlier, I credit [the officers'] testimony in regard to how [those] matters unfolded.

Once [Petitioner's] brother returned to the [condo], the officers saw a gun in his hand. . . .

As the officers testified to, [Petitioner's] brother then came back out of the [condo] without the firearm that they had seen him carrying as he entered into the [condo]. [Officers] took custody of [Petitioner's] brother, and then acquired information confirming that, in fact, Mr. Nicholson was in the [condo] as well as other individuals that were in there.

. . . [G]iving consideration that it appears that the parking lot itself, based on the photographs, directs cars to the side of this [condo], I do not find it unreasonable that individuals were going and coming from the back door as opposed to the front door. I decline to make any findings of subterfuge based on the officers' approach to the back door as opposed to the front door.

As Mr. Nicholson came out of the front door of the [condo], [he] was placed into custody . . . .

I credit [the officers'] testimony that the officers entered the [condo] solely to make the protective sweep for their own safety as well as the safety of others given the fact that they were aware that there was another subject in the [condo], they were aware of the history and background and characteristics of [Petitioner]; and that there was, based on their observation, a firearm located in the [condo].

Taking into consideration all the facts that were available to the officers at that time, . . . the officers' entry into the [condo] to affect a brief protective sweep of the property was appropriate . . . .

7

(Id. at 149-53; see also id. at 158 (finding that "grabb[ing] the sheet . . . hanging on the inside of the [back] door to the [condo] . . . was an act that was also appropriate"); Docket Entry 22 at 1 (memorializing in writing oral ruling deeming "the testimony of the officers credible and adopt[ing] the facts of that testimony as set forth in the record"), 3 ("[T]his [C]ourt finds that during the course of and immediately following the arrest of [Mr.] Nicholson, the officers had a reasonable and articulable belief that there could be armed individuals in the home that presented a threat to the officers' safety. There was sufficient danger and a reasonable concern for the safety of officers to justify a protective sweep in this case based upon the facts presented.").)

As noted in the Introduction, after the foregoing suppression ruling, Petitioner pleaded guilty to drug and related firearm charges (conditioned upon his right to appeal the denial of his Motion to Suppress) and the Court (per Judge Tilley) thereafter entered its Judgment. Petitioner then timely noticed his appeal on May 31, 2011 (Docket Entry 43), shortly after the United States Supreme Court decided Kentucky v. King, ___ U.S. ___, 131 S. Ct. 1849 (2011). In that decision, the Supreme Court reiterated that the Fourth Amendment "warrant requirement is subject to certain reasonable exceptions. One well-recognized exception applies when the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable

8

under the Fourth Amendment." Id. at ___, 131 S. Ct. at 1856 (internal brackets, citation, and quotation marks omitted).

Additionally, the Supreme Court observed that "lower courts have developed an exception to the exigent circumstance rule, the so-called 'police-created exigency' doctrine . . ., but the lower courts have not agreed on the test [for deciding when this exception should] be applied." Id. at ___, 131 S. Ct. at 1857. The Supreme Court resolved that question by holding "that the exigent circumstances rule justifies a warrantless search when . . . the police did not create the exigency <u>by engaging or threatening to engage in conduct that violates the Fourth Amendment</u> . . . ." Id. at ___, 131 S. Ct. at 1858 (emphasis added). Moreover, the Supreme Court expressly rejected any application of the police-created exigency exception that focused on:

1) an officer's "bad faith intent to avoid the warrant requirement," id. at ___, 131 S. Ct. at 1859 (internal quotation marks omitted);

2) the notion that "it was reasonably foreseeable that the investigative tactics employed by the police would create the exigent circumstances," id. (internal quotation marks omitted);

3) the fact that officers possessed "evidence that is sufficient to establish probable cause to search particular premises, [but] do not seek a warrant [and] instead knock on the

9

door and seek either to speak with an occupant or to obtain consent to search," id. at ___, 131 S. Ct. at 1860; and/or

4) a conclusion "that the course of the investigation was contrary to standard or good law enforcement practices," id. at ___, 131 S. Ct. at 1861 (internal quotation marks omitted).

In so ruling, the Supreme Court explicitly abrogated the approach to the police-created exigency exception endorsed by the Fourth Circuit in Mowatt, 513 F.3d at 402 ("[T]he officers here had the option of leaving the probable cause determination to a magistrate. They needed only to seek a warrant before confronting the apartment's occupants. By not doing so, they set up the wholly foreseeable risk that [the exigent circumstances would arise]."). See King, ___ U.S. at ___, 131 S. Ct. at 1859 (identifying Mowatt, 513 F.3d at 402, as example of decision improperly "hold[ing] that police may not rely on an exigency if it was reasonably foreseeable that the investigative tactics employed by the police would create the exigent circumstances" (internal quotation marks omitted)). As a result, Petitioner's appellate counsel (his third overall)[6]

_____

[6] When Petitioner first appeared for a plea hearing, he "requested new counsel. Based on the statements of [Petitioner and his first counsel], the [C]ourt [per United States District Judge Thomas D. Schroeder] allowed the oral motion for substitution of counsel[.]" (Docket Entry dated Sept. 8, 2010; see also Docket Entry 29 (memorializing in writing oral order allowing appointment of second counsel due to "a breakdown in communication between [first] counsel and [Petitioner]"); Docket Entry 31 (appointing second counsel).) Petitioner subsequently pleaded guilty (see
(continued...)

reasonably concluded that, in appealing the suppression ruling, he "had to take a different tact from that argued by [Petitioner's] first attorney [who litigated the Motion to Suppress]." (Docket Entry 71-2, ¶ 5; see also id. ("By the time I filed my [appeal] brief, the primary case [Petitioner's first counsel] had relied on, [Mowatt], had been abrogated by the Supreme Court in [King].").) Petitioner's appellate counsel further credibly averred that "[t]he only viable issue [he] saw was to argue that the officers had illegally entered the curtilage of [Petitioner's] residence when they observed the events leading to the ensuing search." (Id.)

---

⁶(...continued)
Docket Entry dated Oct. 6, 2010), pursuant to a written plea agreement (Docket Entry 35) and a thorough colloquy with the Court (per Judge Tilley) (see Docket Entry 39). During that colloquy, Petitioner stated under oath that he "believe[d] that [his second] lawyer ha[d] done a good job representing [him]" (id. at 31) and that the Factual Basis filed by the United States "accurately stated" the facts of his case (id. at 32; see also Docket Entry 25 (Factual Basis)). Despite those averments, approximately two months after Petitioner entered his guilty plea, he filed a pro se "Memorandum of Law in Support of Motion to Dismiss for Ineffective Assistance of Counsel," in which he complained (A) that his second counsel "ha[d] appeared interested in nothing more than a 'plea bargain,' and ha[d] been untruthful with [Petitioner] in order to force him into a plea agreement" (Docket Entry 37 at 1), (B) that "[i]neffective counsel deires [sic] the [C]ourt of jurisdiction [and] . . . [h]ow ineffective [Petitioner's second] counsel ha[d] been [wa]s easily seen" (id. at 2), and (C) that Petitioner's second counsel "ha[d] apparently made no attempt what so ever to determine that [Petitioner] is actually innocent of the crime [sic] charged" (id.). At a hearing regarding that filing, Petitioner's second counsel "moved orally to withdraw; the [C]ourt [per Judge Tilley] allowed th[at] oral motion and appointed [a third counsel] for [Petitioner]." (Docket Entry dated Jan. 27, 2011.) That third counsel represented Petitioner at sentencing (see Docket Entry 49 at 1) and on appeal, see Roberts, 467 F. App'x at 187.

Accordingly, in the Fourth Circuit, Petitioner's appellate counsel contended that this Court (per now-Chief Judge Osteen) "erred in denying [the] [M]otion to [S]uppress where the [officers] had impermissibly entered onto the curtilage of [Petitioner's] property without a warrant and thereby created an exigent circumstance that they used as a justification to conduct a protective sweep of his residence." Brief of Appellant, United States v. Roberts, No. 11-4622, 2011 WL 4874756, at *6 (4th Cir. Oct. 14, 2011). Petitioner's appellate counsel emphasized the alleged "impermissibl[e] ent[ry] onto the curtilage," id., because he had to concede that, in King, the Supreme Court had embraced the position that "'officers "do not impermissibly create exigent circumstances" when they "act in an entirely lawful manner,"'" id. at *9 (quoting King, ___ U.S. at ___, 131 S. Ct. at 1858, quoting in a parenthetical United States v. McDonald, 916 F.2d 766, 772 (2d Cir. 1990) (en banc)). In making that argument, however, Petitioner's appellate counsel relied on matters addressed in the Motion to Suppress, e.g., the officers' decision to approach the back door despite the presence of the pit bull. See id. at *10 ("The government's contention is that the [officers] were employing a constitutionally accepted investigative tool when they decided to employ a 'knock-and-talk' approach in their search for Mr. Nicholson. . . . The problem with [their] use of the knock-and-talk came in its execution. They did not approach the

12

front door to the residence instead choosing to seek entry through the rear patio area of the [condo]. . . . A patio or deck area that is attached to a home is an intimate part of that residence. . . . [T]he residents of [the condo] . . . had a watch dog chained up at the edge of the patio. . . . When the [officers] went to the back door and entered the curtilage of the residence, they violated the Fourth Amendment by conducting a warrantless intrusion that precipitated that [sic] the events that lead to the 'exigency.'").

Despite the reasonable effort of Petitioner's appellate counsel to present an appellate argument drawn from the framework of Petitioner's Motion to Suppress (yet still colorable under King), the Fourth Circuit construed said argument "not [as] challeng[ing] [this] [C]ourt's finding that exigent circumstances justified the officers' entry into [Petitioner's] residence to conduct a protective sweep . . . [but as] assert[ing] for the first time that the officers impermissibly entered the 'curtilage' surrounding his residence [and] . . . thereby violat[ed] the Fourth Amendment." Roberts, 467 F. App'x at 188. In light of that conclusion, the Fourth Circuit stated that it would review the matter "for plain error." Id. Ultimately, however, the Fourth Circuit effectively ruled directly on the merits of Petitioner's suppression appeal issue, by finding no error at step one of the plain error analysis and not relying in any way on the other three steps of that review process. See id. at 188-89.

13

Specifically, the Fourth Circuit held as follows:

Officers may enter an individual's backyard without a warrant when they have a legitimate law enforcement purpose for doing so. . . .

In this case, the officers had a legitimate reason to approach [Petitioner's] townhouse — to apprehend a wanted fugitive believed to be residing there. Based upon their previous observations during the course of surveillance, the officers saw that all guests approached and entered the townhouse through the rear entrance. As the rear patio connected to an adjoining parking lot along a paved sidewalk, it would be reasonable for members of the public to approach the townhouse through the rear entryway as well. Moreover, although a dog was chained in the backyard, the patio was not fenced and contained no signs forbidding trespassers. Accordingly, <u>the officers reasonably approached the rear door to conduct a knock and talk. Therefore, the district court did not err in denying [Petitioner's] [M]otion to [S]uppress evidence obtained as a result.</u>

<u>Id.</u> (internal quotation marks omitted) (emphasis added).

As the United States has observed (<u>see</u> Docket Entry 71 at 5-6), via Grounds One and Two of the instant Section 2255 Motion, Petitioner seeks to re-litigate suppression issues he raised (or, at a minimum, could have raised) in his underlying criminal case. Specifically, Ground One alleges that officers "purposely allowed [Mr.] Nicholson to enter Petitioners [sic] residence after having several opportunities to apprehend him beforehand. Officers then used his presence to create exigency." (Docket Entry 61 at 2.)[7]

---

[7] To support that contention, Ground One points to the officers' failure to arrest Mr. Nicholson in or around his vehicle (<u>see</u> Docket Entry 61 at 2-3) and concludes that "these unreasonable, poor investigative tactics were obviously done to (continued...)

14

Ground One therefore asks the Court to find a Fourth Amendment violation because "the government deliberately created the exigent circumstances with the bad faith intent to avoid [the] warrant requirement . . . [and further argues that] [e]ven absent bad faith the [C]ourt [should] conclude[] police may not rely on exigent circumstances if it was reasonably foreseeable that the investigative tactics employed by police would create exigent circumstances." (<u>Id.</u> at 4; <u>see also</u> Docket Entry 69 at 1 (stating, under heading "Ground One" that, "[b]y exceeding the scope of a knock and talk procedure officers created exigent circumstances themselves therefore they cannot rely on the exigency exception to justify their warrantless entry").) Similarly, Ground Two asserts that the exigent circumstances exception to the warrant requirement should not apply because "officers had sufficient probable cause to obtaining [sic] a warrant before approaching [Petitioner's] residence." (<u>Id.</u>; <u>see also</u> <u>id.</u> at 4-5 (relying on suppression hearing testimony and quoting/paraphrasing (without attribution) <u>Mowatt</u>, 513 F.3d at 401-02, which (as discussed above) the Supreme Court abrogated in <u>King</u>, ___ U.S. at ___, 131 S. Ct. at 1859).)

---

[7](...continued)
create exigency" (<u>id.</u> at 3). Ground One also challenges the officers' sworn denial (at the suppression hearing) of knowledge of the pit bull's presence behind Petitioner's condo. (<u>See</u> <u>id.</u>; <u>see also</u> <u>id.</u> (stating that suppression hearing testimony showed "that officers chose to approach the back door on purpose and cause the dog to bark to get a response from the occupants inside").)

"Once a litigant is provided a full and fair opportunity to litigate a Fourth Amendment claim, he cannot re-litigate the claim in a motion pursuant to § 2255 unless there has been an intervening change in law [which Petitioner has not alleged]. The record [as detailed above] reflects that [he] was given a full and fair opportunity to litigate th[ese] claim[s] at trial [and on appeal]. Accordingly, [he] cannot re-litigate [them] in a § 2255 motion." United States v. Schulte, No. 99-7667, 230 F.3d 1356 (table), 2000 WL 1390205, at *1 (4th Cir. Sept. 26, 2000) (unpublished) (internal citation omitted);[8] see also Ray v. United States, 721 F.3d 758, 762 (6th Cir. 2013) ("[The] Fourth Amendment claim was properly denied . . . because [the petitioner] had an opportunity for full and fair litigation of this claim at trial and on direct appeal.");

_____

[8] To the extent Petitioner relies on Kansas v. Campbell, 300 P.3d 72, 297 Kan. 273 (2013) (see Docket Entry 69 at 2), that decision does not represent "an intervening change in law," because it does not constitute new controlling authority, i.e., "Supreme Court or Fourth Circuit precedent issued subsequent to [his] direct appeal," United States v. Cohen, Nos. 92-6206, 92-6284, 983 F.2d 1058 (table), 1993 WL 5899, at *2 (4th Cir. Jan. 14, 1993) (unpublished); see also Cantor v. United States, No. 99-2511, 205 F.3d 1321 (table), 2000 WL 232176, at *2 (2d Cir. Feb. 18, 2000) (unpublished) ("[The petitioner] cites a case from the Sixth Circuit that was decided after his conviction. . . . [A]lthough there is an exception to the rule against relitigation for an 'intervening change of law,' [the petitioner] cannot invoke it because [a Sixth Circuit decision] is not binding on this court." (internal citation omitted)); United States v. Spring, No. 2:93CR215DS-1, 2015 WL 1432637, at *8 (D. Utah Mar. 27, 2015) (unpublished) ("The opinions that the Defendant cites as intervening changes of law are not controlling on this [c]ourt and do not render the previous judgment infirm.").

<u>Owens v. United States</u>, 387 F.3d 607, 609 (7th Cir. 2004) ("[A] violation of the Fourth Amendment cannot be a ground for habeas corpus (or . . . the grant of a section 2255 motion) unless the defendant could not have presented a Fourth Amendment defense at trial."); <u>United States v. Ishmael</u>, 343 F.3d 741, 742 (5th Cir. 2003) ("We do not reach the merits of [the petitioner's] § 2255 petition because we hold that he had a full and fair opportunity to litigate his Fourth Amendment claim in pre-trial proceedings and on direct appeal."); <u>United States v. Cook</u>, 997 F.2d 1312, 1317 (10th Cir. 1993) ("Fourth Amendment violations are not reviewable in a § 2255 motion when the federal prisoner has had a full and fair opportunity to litigate the Fourth Amendment claim at trial and present issues on direct appeal."); <u>United States v. Hearst</u>, 638 F.2d 1190, 1196 (9th Cir. 1980) ("[The petitioner] claims that [certain evidence] was the fruit of a Fourth Amendment violation and should have been suppressed. The Government provided her a full and fair opportunity to raise this issue on direct appeal; therefore, it cannot be raised on collateral review."); <u>Christian v. United States</u>, Nos. 3:10CR200, 12CV702, 2014 WL 4444555, at *4 (E.D. Va. Sept. 9, 2014) (unpublished) ("Fourth Amendment claims are not cognizable on collateral review as long as the defendant had a 'full and fair' opportunity to litigate the claim on direct appeal."), <u>appeal dismissed</u>, No. 14-7605, 2015 WL 2084142 (4th Cir. May 6, 2015) (unpublished). Grounds One and Two therefore fail.

Ground Three:  Sentencing Claim

"In 1986, Congress enacted . . . the Anti-Drug Abuse Act [which] . . . sets forth mandatory minimum penalties of 5 and 10 years applicable to a drug offender depending primarily upon the kind and amount of drugs involved in the offense." Dorsey v. United States, ___ U.S. ___, ___, 132 S. Ct. 2321, 2327 (2012) (citing 21 U.S.C. § 841(b)(1)(A)-(C)).  The Anti-Drug Abuse Act also establishes respective, default maximum prison terms of life, 40 years, and 20 years under Sections 841(b)(1)(A)-(C). See United States v. Rangel, 781 F.3d 736, 744 (4th Cir. 2015) (observing that "20-year maximum [generally applies] under § 841(b)(1)(C)); United States v. Flores-Alvarado, 779 F.3d 250, 253 (4th Cir. 2015) (stating that under Section 841(b)(1)(B) "maximum . . . was 40 years' imprisonment"); United States v. Chatmon, 718 F.3d 369, 374 (4th Cir. 2013) (noting that Section 841(b)(1)(A) authorizes life sentence).  By setting the amount of cocaine base (i.e., "crack cocaine") that made Section 841(b)(1)(A) & (B) applicable at only 50 and five grams, respectively, the Anti-Drug Abuse Act "treated crack cocaine crimes as far more serious [than crimes involving cocaine hydrochloride, i.e., 'powder cocaine,' as to which Section 841(b)(1)(A) & (B) adopted thresholds of 5,000 and 500 grams, respectively]." Dorsey, ___ U.S. at ___, 132 S. Ct. at 2327.

"In 2010, Congress . . . enacted the Fair Sentencing Act ["FSA"] into law . . . increas[ing] the drug amounts triggering

18

mandatory minimums [and heightened maximums under Section 841(b)(1)] for crack trafficking offenses from 5 grams to 28 grams and from 50 grams to 280 grams (while leaving powder at 500 grams and 5,000 grams respectively)." Id. at ___, 132 S. Ct. at 2329. "The [FSA] took effect on August 3, 2010." Id. Subsequently, courts "c[a]me to different conclusions as to whether [its] more lenient [sentencing provisions] apply to offenders [like Petitioner] whose unlawful conduct took place before, but whose sentencing took place after . . . August 3, 2010." Id. at ___, 132 S. Ct. at 2330. In 2012, the Supreme Court "conclude[d] that Congress intended the [FSA] to apply to the post-[FSA] sentencing of pre-[FSA] offenders." Id. at ___, 132 S. Ct. at 2335.

Ground Three of the instant Section 2255 Motion asserts that "Dorsey applies to Petitioners [sic] case as it has the effect of lowering his career offender guideline under the FSA's new more lenient penalty provisions. In this case applying Dorsey would result in lowering Petitioners [sic] career offender guideline from level 34 to level 32 resulting in a sentencing range of 151 to 188 months of imprisonment." (Docket Entry 61 at 5 (underlining of Dorsey added).)[9] As the United States has noted, "Petitioner's

---

[9] Petitioner apparently arrived at those offense level figures by looking to the portion of the Career Offender Guideline that (A) applies when a defendant qualifies as a Career Offender but does not have a conviction under 18 U.S.C. § 924(c) and (B) sets an offense level of 34 for offenses of conviction carrying a statutory (continued...)

guideline range of 262-327 was based on his career offender status as applied to the violation of 18 U.S.C. § 924(c)(1)(A)(i) under U.S.S.G. § 4B1.1(c)(3).  That guideline calculation is entirely unaffected by application of the FSA."  (Docket Entry 71 at 11 (internal citation omitted).)[9] Ground Three thus lacks merit.[11]

---

[9](...continued)
maximum prison term of "25 years of more" (which, prior to the FSA, his drug trafficking offense did, because it involved five grams or more of cocaine base) and an offense level of 32 for offenses of conviction carrying a statutory maximum prison term of "20 years or more, but less than 25 years" (which, after the FSA, his drug trafficking offense does, because it involved less than 28 grams of cocaine base).  See U.S.S.G. § 4B1.1(b).

[10] Petitioner's Reply insists that "[b]ecause 18 U.S.C. § 924(c) is not [his] only count of conviction he should not be sentenced under [U.S.S.G. §] 4[B]1.1(c)(3).  He should be sentenced under [U.S.S.G. §] 4[B]1.1(c)(2)(A) which would add the 60 month consecutive penalty [mandated for his firearm conviction] to the 151-188 month sentence [for his drug trafficking conviction] that [P]etitioner should be awarded for the application of the FSA to his case."  (Docket Entry 73 at 3-4.)  That argument ignores the plain language of the Career Offender Guideline which states that, "[i]n the case of multiple counts of conviction in which at least one of the counts is a conviction other than a conviction for 18 U.S.C. § 924(c) or § 929(a), the guideline range shall be the greater of – (A) the guideline range that results by adding the mandatory minimum consecutive penalty required by the 18 U.S.C. § 924(c) or § 929(a) count(s) to the minimum and the maximum of the otherwise applicable guideline range determined for the count(s) of conviction other than the 18 U.S.C. § 924(c) or § 929(a) count(s); and (B) the guideline range determined using the table in subsection (c)(3)."  U.S.S.G. § 4B1.1(c)(2) (emphasis added).

[11] Although (as noted in the Introduction) Petitioner received a total imprisonment sentence of 294 months, the Court (per Judge Tilley) structured that term to provide a prison sentence of 234 months on Petitioner's drug trafficking conviction and a consecutive prison sentence of 60 months on his firearm conviction. (Docket Entry 42 at 2.)  Accordingly, Petitioner's imprisonment
(continued...)

<u>Ground Four: Ineffective Assistance of Appellate Counsel Claim</u>

Ground Four asserts that "[h]ad Petitioners [sic] [appellate] counsel taken the time to investigate and prepare for Petitioners [sic] appeal, [said] counsel would have been aware of several issues that should have been brought to the attention of the Court of Appeals." (Docket Entry 61 at 6.) In that regard, it cites:

1) testimony at the suppression hearing indicating that officers "ha[d] enough probable cause for a warrant prior to approaching [] Petitioners [sic] residence" (<u>id.</u>);

2) "the fact that [] Petitioners [sic] residence were [sic] privately owned condominiums and there were no trespassing signs posted throughout the neighborhood" (<u>id.</u>; <u>see also</u> Docket Entry 73 at 5 (copy of photograph of sign with markings "Cedar Lake," "Private Property," "No Trespassing," and "No Soliciting"));

3) the argument that "[t]he sidewalk that the government made out to be public in Petitioners [sic] appeal is actually a small

---

[11](...continued)
term for his drug trafficking conviction does not exceed the 20-year maximum established by Section 841(b)(1)(C) (which, pursuant to <u>Dorsey</u>, the FSA makes retroactively applicable to said conviction, because it involved less than 28 grams of cocaine base). "Moreover, [Petitioner's five-year] term of supervised release is within the bounds of § 841(b)(1)(C), which provides for a minimum of three years' supervised release and does not cap the period of supervised release that a district court may impose." <u>United States v. Alston</u>, 722 F.3d 603, 606 n.4 (4th Cir. 2013) (internal quotation marks omitted). In any event, Petitioner could show no prejudice on that front because he received a concurrent five-year supervised release term in connection with his firearm conviction. (Docket Entry 42 at 3.)

private walk that led to the rear of [] Petitioners [sic] residence
only, from Petitioners [sic] private parking area . . . [and that]
if Petitioners [sic] counsel would have looked at photos, or went
out to the residence and taken photos himself he would have been
aware of the expectation of privacy at the rear of Petitioners
[sic] residence and that no other member of the general public
would have felt comfortable approaching the residence from the rear
as opposed to ringing the front doorbell" (id.; see also Docket
Entry 75 at 1 (referencing four attached photographs "of the rear
of [Petitioner's] residence . . . for the purpose of showing that
[Petitioner] had an expectation of privacy at the rear of [his]
home and that only family and close friends would have known that
it was alright to approach the rear of the residence"); and

4) appellate counsel's "fail[ure] to raise every ground
asserted in [the instant Section 2255 Motion] before the Court of
Appeals" (id.).

"Appellate counsel [is] not ineffective for failing to raise
[an issue] on appeal [that] is plainly without merit." Carter v.
Lee, No. 99-10, 202 F.3d 257 (table), 1999 WL 1267353, at *11 (4th
Cir. Dec. 29, 1999) (unpublished); see also Oken v. Corcoran, 220
F.3d 259, 269 (4th Cir. 2000) ("[C]ounsel [i]s not constitutionally
ineffective in failing to [take action if] . . . it would have been
futile for counsel to have done so . . . ."). Any appeal
predicated on the first of the above-quoted matters, i.e., evidence

22

that officers "ha[d] enough probable cause for a warrant prior to approaching [] Petitioners [sic] residence" (Docket Entry 61 at 6), would not have succeeded, in light of the Supreme Court's refusal to allow courts to invalidate exigent circumstance searches because officers approached a premises without a search warrant despite possessing evidence "sufficient to establish probable cause to search [the] premises," King, ___ U.S. at ___, 131 S. Ct. at 1860.

Nor could Petitioner have prevailed on appeal by raising the second and third above-quoted issues regarding the availability of evidence purportedly illustrating the private nature of his neighborhood and of his condo's rear entry (Docket Entry 61 at 6), because he has not alleged (much less shown) that the record on appeal contained such evidence (see id.) and instead has relied (or contended that his appellate counsel should have relied) on new evidence (see id.; Docket Entry 73 at 5; Docket Entry 75 at 1-3). See United States v. Russell, 971 F.2d 1098, 1112 (4th Cir. 1992) ("[The defendant] may not raise a claim on direct appeal relating to evidence that is not part of the record[.]"); Miller v. United States, 455 F.2d 833, 835 n.3 (4th Cir. 1971) ("In an appendix to their brief in this court, claimants have printed further correspondence which they argue supports their claim. The documents are not part of the record, were not considered by the district court, and will not be considered by us."); see also Fed. R. App. P. 10(a) ("The following items constitute the record on

23

appeal: (1) the original papers and exhibits filed in the district court; (2) the transcript of proceedings, if any; and (3) a certified copy of the docket entries prepared by the district clerk."); United States v. Sifford, 330 F. App'x 46, 48 (4th Cir. 2009) ("As this laboratory report to which [the defendant] refers is not part of the record on appeal, it is not properly before this court for consideration."); Jensvold v. Shalala, No. 96-1964, 141 F.3d 1158 (table), 1998 WL 141156, at *2 (4th Cir. Mar. 30, 1998) (unpublished) ("We grant Appellee's motion to strike [Appellant's] appendix, which contains affidavits and other documents which are not part of the record in the action in the district court.").[12]

As to the fourth (and final) above-quoted item, i.e., the failure of Petitioner's appellate counsel to raise on direct appeal the claims in Grounds One, Two, and Three of the instant Section 2255 Motion, Petitioner yet again has failed to state a viable claim for ineffective assistance. Ground One asserts that "[o]fficers created [the] exigency [that led to the search] by purposely allowing [Mr. Nicholson] to enter Petitioners [sic]

_____

[12] Even if it constituted part of the appellate record, evidence of private ownership of homes and of no trespassing signs in Petitioner's neighborhood or of the character of the parking area and walkway leading to the rear of his condo would not have altered the result on appeal, as the Fourth Circuit based its ruling that officers acted properly by approaching Petitioner's rear door on evidence showing that (A) they observed foot traffic at his back door and (B) he lacked a fence around or no trespassing signs at his back door, see Roberts, 467 F. App'x at 189.

residence by using unreasonable and poor investigative tactics."
(Docket Entry 61 at 2; see also id. at 2-3 (focusing on failure of
officers to arrest man they suspected to be Mr. Nicholson in or
around his vehicle and on alleged incredibility of officers' denial
of knowledge of pit bull's presence at rear of condo).) More
specifically, Ground One argues that "the government deliberately
created the exigent circumstances with the bad faith intent to
avoid [the] warrant requirement . . . [and that] it was reasonably
foreseeable that the investigative tactics employed by police would
create exigent circumstances." (Id. at 4.) Any such arguments
would have failed on appeal, given the Supreme Court's ruling that
courts cannot refuse to find exigent circumstances based on (A) an
officer's "bad faith intent to avoid the warrant requirement,"
King, ___ U.S. at ___, 131 S. Ct. at 1859 (internal quotation marks
omitted), (B) a finding that "it was reasonably foreseeable that
the investigative tactics employed by the police would create the
exigent circumstances," id. (internal quotation marks omitted),
and/or (C) a determination "that the course of the investigation
was contrary to standard or good law enforcement practices," id. at
___, 131 S. Ct. at 1861 (internal quotation marks omitted).
Petitioner thus cannot show that his appellate counsel provided
ineffective assistance by declining to litigate Ground One.

Ground Two, in turn, contends "[o]fficers had sufficient
probable cause to obtain a search warrant prior to approaching

25

Petitioners [sic] residence." (Docket Entry 61 at 4.) As discussed above, elsewhere in Ground Four, he similarly complained that his appellate counsel should have appealed on the basis that officers "ha[d] enough probable cause for a warrant prior to approaching [his] residence" (id. at 6), but that contention could not sustain an ineffective assistance claim because the appeal would have foundered on the Supreme Court's bar against consideration of such matters in the exigent circumstances context, see King, ___ U.S. at ___, 131 S. Ct. at 1860. Petitioner's assertion that his appellate counsel should have presented Ground Two on appeal suffers the same fate. Lastly, for reasons explained above, Ground Three plainly lacks merit and "[a]ppellate counsel [is] not ineffective for failing to raise [an issue] on appeal [that] is plainly without merit," Carter, 1999 WL 1267353, at *11.[13]

---

[13] In addition to the four above-discussed, specific challenges to Petitioner's representation on appeal, Ground Four states in conclusory fashion that he "was clearly prejudiced by counsels' [sic] failure to appeal his actual suppression hearing and instead opting to argue a frivolous issue that was never even mentioned at his suppression hearing." (Docket Entry 61 at 6.) "Unsupported, conclusory allegations do not warrant an evidentiary hearing, much less relief." Whitley v. United States, Nos. 1:03CR445, 1:12CV67, 2014 WL 4443295, at *6 n.1 (M.D.N.C. Sept. 9, 2014) (unpublished) (recommendation of Webster, M.J., adopted by Beaty, S.J.) (citing Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992), abrog'n on other grounds recog'd, Yeatts v. Angelone, 166 F.3d 255 (4th Cir. 1999)), appeal dismissed, 599 F. App'x 111 (4th Cir. 2015); see also Cano v. United States, Nos. 1:05CR354-4, 1:09CV321, 2009 WL 3526564, at *3 (M.D.N.C. Oct. 22, 2009) (unpublished) (Dietrich, M.J.) ("[The] [p]etitioner has provided only conclusory allegations which meet neither the error nor the prejudice prong of [an (continued...)

In sum, Ground Four falls short as a matter of law.

CONCLUSION

Petitioner has not identified a viable basis for collateral relief.

**IT IS THEREFORE RECOMMENDED** that Petitioner's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Docket Entry 61) be denied without a certificate of appealability.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

June 9, 2015

---

[13](...continued)
ineffective assistance claim].”), <u>recommendation adopted</u>, slip op. (M.D.N.C. Dec. 29, 2009) (Beaty, C.J.). Further, a heightened rationale for rejecting Petitioner's bald assertions exists in this context because, in general, “court[s] must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,” <u>Strickland v. Washington</u>, 466 U.S. 668, 689 (1984), and, in particular, “courts must accord appellate counsel the presumption that he decided which issues were most likely to afford relief on appeal,” <u>Bell v. Jarvis</u>, 236 F.3d 149, 164 (4th Cir. 2000) (en banc) (internal quotation marks omitted). The record here simply provides no basis to doubt that Petitioner's appellate counsel actually and reasonably determined (A) he “had to take a different tact from that argued by [Petitioner's] first attorney [at the suppression hearing]” (Docket Entry 71-2, ¶ 5; <u>see also id.</u> (“By the time I filed my [appeal] brief, the primary case [Petitioner's first counsel] had relied on, [<u>Mowatt</u>], had been abrogated by the Supreme Court in [<u>King</u>].”)) and (B) “[t]he only viable [option for appeal] . . . was to argue that the officers had illegally entered the curtilage of [Petitioner's] residence when they observed the events leading to the ensuing search” (<u>id.</u>; <u>see also id.</u>, ¶ 7 (“I exercised my judgment to address what I thought was the best issue on appeal . . . .”).